**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RONALD F BELL,

               Plaintiff,

v.                                   Case No.   3:19-cv-532-J-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

               Defendant.

_____

## OPINION AND ORDER[1]

### I.   Status

     Ronald F Bell ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of "leg and back pain." See Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed August 1, 2019, at 79, 86, 229 (emphasis omitted). Plaintiff filed an application for SSI on February 25, 2016,[2] alleging a disability onset date of October 7, 2010. Tr. at 205. The application was denied initially, Tr. at 78, 79-83, 95-97, 98, and upon reconsideration, Tr. at 84, 85-94, 108, 109-13.

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed August 1, 2019; Reference Order (Doc. No. 15), signed August 5, 2019 and entered August 6, 2019.

[2]     Although actually completed on February 25, 2016, see Tr. at 205, the protective filing date of the application is listed elsewhere in the administrative transcript as January 21, 2016, see, e.g., Tr. at 79.

On May 9, 2018, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 25-67. At the hearing, Plaintiff's counsel agreed to designate the protective filing date (January 21, 2016, see supra n.2) as the alleged disability onset date. See Tr. at 29 (hearing); Tr. at 12, 20 (Decision using protective filing date). Plaintiff was fifty-four years old at the time of the hearing. See Tr. at 29-30. The ALJ issued a Decision on June 15, 2018, finding Plaintiff not disabled since the alleged disability onset date. See Tr. at 10-20.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 204. The Appeals Council received additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4, 5; see Tr. at 265-68 (brief). On March 8, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On May 6, 2019, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following arguments: 1) the ALJ "failed to articulate good cause for rejecting the opinions of [Plaintiff's] treating physician(s) [(Laura Baker, M.D. and Philip Carnevale, M.D.)] and further erred in the rejection of the consultative physician's examining opinion, Dr. [Ciceron] Lazo, as to [Plaintiff's] functional capacity"; and 2) the ALJ "erred in failing to acknowledge or discuss [Plaintiff's] borderline age, even though the higher age category would have required a finding of disability under the Medical Vocational Guidelines ('Grids')." Plaintiff's Brief (Doc. No. 20; "Pl.'s Br."), filed

October 31, 2019, at 1, 9-19 (first argument), 19-23 (second argument) (emphasis omitted). On December 13, 2019, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings. As explained below, although the ALJ did not err in evaluating the medical opinions, he did commit reversible error in failing to consider Plaintiff's borderline age.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[3]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 3 -

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 12-20. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 21, 2016, the application date." Tr. at 12 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: lumbar disc disease, gastroesophageal reflux disorder (GERD), diabetes mellitus, . . . a history of left hip injury requiring surgical correction and a history of asthma." Tr. at 12 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 12 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 416.967(b) with the following limitations: [Plaintiff] can sit, stand, and walk up to six hours each. He needs a sit or stand option that allows for a change of positions every thirty minutes, which is a brief positional change lasting no more than three minutes at a time where the individual remains at the workstation during the positional change. He can push and pull as much as he can lift and carry. He can occasionally use foot controls. He can occasionally climb ramps and stairs. He can never climb ladders or scaffolds. He can frequently perform balancing, stooping, and crouching. He can occasionally kneel and never crawl. He should not work around unprotected heights or moving mechanical parts. He should avoid environments with temperature extremes. In addition to normal breaks, he may be off task up to 5% of the time in an eight-hour workday.

Tr. at 13 (emphasis omitted).

At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 19 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("52 years old . . . on the date the application was filed"),

- 4 -

education ("at least a high school education"), lack of work experience, and RFC, the ALJ relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "[g]ate [a]ttendant," "[t]icket [s]eller," and "[o]ffice [h]elper." Tr. at 19-20 (emphasis and citation omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . since January 21, 2016, the date the application was filed." Tr. at 20 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner

must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

As noted above, Plaintiff argues the ALJ erred in two ways: 1) discounting the opinions of Plaintiff's treating physicians and examining physician; and 2) failing to consider Plaintiff's borderline age. For ease of discussion, the undersigned addresses Plaintiff's borderline age first and the ALJ's assessment of the medical opinions second.

### A.  Borderline Age

#### 1.  Parties' Arguments

Plaintiff asserts that his claim involves a borderline age situation because "[at] the time of [the D]ecision, [he] was less than six months away from turning age 55," which requires the ALJ to consider whether to place Plaintiff in the "advanced age" category at step five. Pl.'s Br. at 19-20; <u>see id.</u> at 19-24. Plaintiff contends that remand is warranted because the ALJ "erred in failing to ask the vocational expert to consider the borderline age factor and the [D]ecision failed to reflect consideration of [Plaintiff's] borderline age." <u>Id.</u> at 23-24 (citation omitted).

Responding, Defendant argues that "the ALJ properly considered Plaintiff's age and correctly placed him in the closely approaching advanced age." Def.'s Mem. at 18. Defendant contends that "Plaintiff failed to offer any reason why he should have been considered 55 years old prior to his 55th birthday." <u>Id.</u> Defendant further asserts that "the

VE's testimony provides substantial evidence that Plaintiff's age and other vocational factors did not prevent him from working until his 55th birthday." Id. at 20.

### 2. Applicable Law

At step five of the sequential inquiry, an "ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant 'can make an adjustment to other work.'" Phillips, 357 F.3d at 1239 (quoting 20 C.F.R. § 404.1520(a)(4)(v)). The ALJ may make this determination in one of two ways: by applying the Grids or by obtaining the testimony of a VE regarding the work that the person can perform. See id. at 1239-40. "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the [G]rids to determine whether other jobs exist in the national economy that a claimant is able to perform." Id. at 1242. An ALJ may not exclusively rely on the Grids, however, if "the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." Id. (emphasis and citations omitted).

"The [G]rids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience." Id. at 1240. "Combinations of these factors yield a statutorily-required finding of 'Disabled' or 'Not Disabled.'" Id. With respect to an individual's age, there are three categories: "Younger person" (under age fifty (50)); "Person closely approaching advanced age" (age fifty (50) to fifty-four (54)); and "Person of advanced age" (age fifty-

five (55) or older).   20 C.F.R. § 416.963(c)-(e).   The Regulations provide what is to be done when an individual is bordering on another age category:

> When we make a finding about your ability to do other work under § 416.920(f)(1), we will use the [above] age categories . . . .   We will use each of the age categories that applies to you during the period for which we must determine if you are disabled.   We will not apply the age categories mechanically in a borderline situation.   <u>If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case</u>.

20 C.F.R. § 416.963(b) (emphasis added).

### 3.   Analysis

As Plaintiff notes, at the time the ALJ issued the Decision, Plaintiff was about six months away from turning fifty-five. <u>See</u> Tr. at 30 (date of birth); Tr. at 20 (date of Decision). Pursuant to the above Regulation, then, the ALJ was required to consider whether to place Plaintiff in the "advanced age" category. <u>See, e.g.</u>, <u>Dubyna v. Colvin</u>, No. 8:13-cv-1966-T-TGW, 2014 WL 4660363, at *7 (M.D. Fla. Sept. 17, 2014) (unpublished) (recognizing that "[a]lthough there is no bright line rule for how many months is borderline, the predominant view is that six months from the next age category is the outer limit"); <u>see also</u> Soc. Sec. Admin., Program Operations Manual System ("POMS") (stating, "Usually, we consider a few days to a few months to mean a period not to exceed 6 months").[4]  The ALJ, however, did not mention or discuss Plaintiff's borderline age in the Decision. Instead, the ALJ found

---

[4]        The POMS is a "publicly available operating instructions for processing Social Security claims." <u>Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler</u>, 537 U.S. 371, 385, (2003). "While the POMS does not have the force of law, it can be persuasive." <u>Stroup v. Barnhart</u>, 327 F.3d 1258, 1262 (11th Cir. 2003).

that Plaintiff "was 52 years old, which is defined as an individual closely approaching advanced age, <u>on the date the application was filed</u>." Tr. at 19 (some emphasis and citation omitted); <u>see</u> 20 C.F.R. § 416.963(b) (indicating that an adjudicator will consider whether a borderline age situation merits being placed in the older age category and also that age will be considered "during the period for which we must determine if [the claimant is] disabled").

Without any indication of whether the ALJ considered Plaintiff's borderline age situation, the undersigned finds that the ALJ committed reversible error.  <u>See, e.g.</u>, <u>McShane v. Comm'r of Soc. Sec.</u>, No. 8:15-cv-677-T-JSS, 2016 WL 836690, at *4-5 (collecting cases finding "that an ALJ must consider a claimant's borderline situation and explain his or her decision to apply a particular age category"). Defendant's assertion that the VE's testimony provides substantial evidence that Plaintiff's age did not prevent him from working until his fifty-fifth birthday is unconvincing. Had the ALJ followed the Regulations, he very well could have determined that Plaintiff's borderline age merited Plaintiff being placed in the "advanced age" category. In that instance, the ALJ likely would have found Plaintiff to be disabled with no need to employ the services of a VE. <u>See</u> Grid Rule 202.04 (dictating a finding of disabled). The ALJ himself even recognized that if a "claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the [Grids] are used as a framework for decision[-]making unless there is a rule that directs a conclusion of 'disabled' without considering the additional exertional and/or non-exertional limitations." Tr. at 19 (citing SSR 83-12, 1983 WL 31252; SSR 83-14, 1983 WL 31254 (stating, "Where a person's [RFC], age, education, and work experience coincide with the criteria of an extertionally based rule in Table No. 1, 2, or 3—and that rule directs a conclusion of 'Disabled'—there

is no need to consider the additional effects of a nonexertional impairment since consideration of it would add nothing to the fact of disability")).

Moreover, the record contains substantial evidence that is relevant and critical to an evaluation of Plaintiff's borderline age situation. At the hearing, Plaintiff testified he has not worked on a regular and sustained basis since 1984; that he has not had a driver's license since 1991; and that although he graduated high school, he completed only one year of college. See Tr. at 31-32, 35-36. Plaintiff also testified at length regarding the side effects of his prescribed pain medication. See Tr. at 40-42, 56-57, 59-60. Specifically, he stated he cannot think clearly, he is forgetful, and he loses track of conversations. Tr. at 42, 56-57, 59-60. He indicated that although he watches television, he "drift[s] off" "all the time." Tr. at 56. Indeed, Plaintiff's counsel at the administrative level noted at the hearing that in their "conversations" she has "had to pull [Plaintiff] back to answer [her] question" because he was "answering other questions or talking about other things." Tr. at 60. Plaintiff stated this happens to him with other people as well. Tr. at 60. The ALJ failed to consider this evidence in light of Plaintiff's borderline age situation, and the Court cannot review an assessment of evidence that was never done by the ALJ.[5]

---

[5]   To the extent the ALJ found Plaintiff's allegations regarding the side effects of his medication inconsistent with the evidence, Tr. at 14, such finding is not supported by substantial evidence. The ALJ did not point to any medical records that were inconsistent with Plaintiff's allegations in this regard. With respect to Plaintiff's activities of daily living, the ALJ noted that Plaintiff makes his bed, vacuums, is able to cook, puts clothes in the washer, watches television, shops for groceries, and uses a tablet and computer. Tr. at 18. These activities do not appear to be inconsistent with Plaintiff's allegations that he cannot think clearly, is forgetful, and loses track of conversations. Further, the ALJ stated earlier in the Decision that Plaintiff's "son has a dress shop that opened on the weekends, and [Plaintiff] helps him for several hours." Tr. at 14. This is an inaccurate representation of the record. Plaintiff testified he goes to his son's dress shop for only about two hours. Tr. at 45. On remand, the ALJ should assess these and other relevant subjective complaints in evaluating Plaintiff's borderline age.

"Without any mention or discussion of Plaintiff's borderline situation in the [D]ecision—the significance of which may have affected the ultimate conclusion in this case—it is impossible for the Court to ensure that the ALJ applied proper legal standards in evaluating Plaintiff's ability to perform other work and to determine whether the ALJ's Decision was supported by substantial evidence." McShane, 2016 WL 836690, at *6; see also Bell v. Colvin, No. CV 115-090, 2016 WL 3906537, at *4 (S.D. Ga. June 21, 2016) (rejecting "Commissioner's attempt to relieve the ALJ of her burden to show she made an individualized determination about the proper age category") (unpublished), report and recommendation adopted, No. CV 115-090, 2016 WL 3892431 (S.D. Ga. July 14, 2016) (unpublished). Thus, the matter is due to be remanded for the ALJ to consider, as required by the Regulations, whether Plaintiff's borderline age situation merits placing him in the advanced age category.

## B.  Medical Opinions

### 1.  Parties' Arguments

Plaintiff contends the reasons provided by the ALJ to reject the opinions of Plaintiff's treating physicians do not amount to good cause. Pl.'s Br. at 15-16. According to Plaintiff, treatment notes "are very sparse as far as examination findings and do not address [Plaintiff's] functioning." Id. at 15. Plaintiff argues that contrary to the ALJ's findings, Dr. Lazo's examination notes are consistent with his subsequent opinions. Id. at 18-19.

Responding, Defendant asserts the ALJ found that the opinions from Plaintiff's treating physicians were inconsistent with the medical record and in doing so provided good cause to reject their opinions. Def.'s Mem. at 10-13. Likewise, argues Defendant, the

ALJ's finding that Dr. Lazo's opinions were inconsistent with the record is supported by substantial evidence. Id. at 13-15.

## 2. Applicable Law[6]

The Regulations establish a hierarchy among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 416.927. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20

---

[6]     On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017); see also 82 Fed. Reg. 15, 132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 8244). Because Plaintiff filed his claim before that date, the undersigned cites the rules and Regulations that were in effect on or otherwise applicable to the date the claim was filed, unless otherwise noted.

[7]     "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1); see also 20 C.F.R. § 416.902 (defining "[a]cceptable medical sources"); 20 C.F.R. § 416.913(a).

C.F.R. § 416.927(c)(2)-(5); see also 20 C.F.R. § 416.927(f); see also McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

With regard to a treating physician,[8] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 416.927(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

---

[8]     A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 416.902.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. <u>Schink</u>, 935 F.3d at 1259; <u>Hargress v. Soc. Sec. Admin., Comm'r</u>, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. <u>Schink</u>, 935 F.3d at 1259; <u>Hargress</u>, 883 F.3d at 1305 (citation omitted); <u>Phillips</u>, 357 F.3d at 1240-41; <u>see also</u> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583-84 (11th Cir. 1991); <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. <u>See</u> 20 C.F.R. § 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); <u>see also</u> 20 C.F.R. § 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz</u>, 825 F.2d at 279); <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).

### 3. Medical Opinions and Analysis

#### a. _Treating Opinions_

Dr. Carnevale and Dr. Baker work together at the Parthenon Medical Center and have treated Plaintiff for chronic lower-back pain since at least April 2013. See Tr. at 426-27 (April 2013 MRI results indicating Dr. Carnevale referred Plaintiff for MRI); Tr. at 328-425, 456-70 (treatment notes spanning December 2014 to March 2018). The treatment notes reflect that Plaintiff sees either Dr. Carnevale or Dr. Baker roughly once a month. See Tr. at 328-427, 456-70.

On May 8, 2017, Dr. Carnevale completed a "Physical RFC Questionnaire," see Tr. at 283-87, in which he opined in relevant part that Plaintiff has the following work-related limitations. Plaintiff is "[i]ncapable of even 'low stress' jobs." Tr. at 284. Plaintiff can walk only two city blocks "without rest or severe pain." Tr. at 284. Plaintiff can sit only one hour at a time and can stand only one hour at a time. Tr. at 284-85. Plaintiff can work only two hours a day. Tr. at 285. In an eight-hour workday, Plaintiff can sit about two hours and can stand/walk for two hours. Tr. at 285. Plaintiff needs a job that permits shifting positions. Tr. at 285. He will need to take four thirty-minute unscheduled breaks during the workday. Tr. at 285. He must use an assistive device when "engaging in occasional standing/walking." Tr. at 285.

Dr. Carnevale further opined that Plaintiff cannot lift or carry fifty pounds or more and can rarely carry or lift twenty pounds. Tr. at 286. He can rarely look down, turn his head to the side, and look up. Tr. at 286. He can occasionally hold his head in a static position. Tr. at 286. He can rarely twist, stoop, and climb stairs. Tr. at 286. He can never

crouch, squat, or climb ladders. Tr. at 286. He can reach only fifty percent of the time in an eight-hour workday. Tr. at 286. Plaintiff is likely to be absent from work more than four days a month. Tr. at 286. According to Dr. Carnevale, Plaintiff has had the above limitations since December 22, 2016. Tr. at 287.

The administrative transcript also contains a short statement dated January 8, 2018 representing that except for "flare[-]ups," Plaintiff's limitations are "essentially unchange[d]" from those set out in the May 2017 Physical RFC Questionnaire. Tr. at 443. It also indicates that these limitations do not apply as of October 7, 2010.[9] Tr. at 443. It is unclear whether the statement was authored by Dr. Carnevale or Dr. Baker. As Defendant asserts, the signature block contains Dr. Baker's name in print; but as Plaintiff points out, the actual signature and the handwriting appear to be those of Dr. Carnevale. See Tr. at 443.

The ALJ gave "little weight" to the opinions in the May 2017 Physical RFC Questionnaire. Tr. at 15-16. The ALJ explained that "[a]lthough Dr. Carnevale is a treating physician, the RFC completed by him is not supported by the treatment record." Tr. at 16. This conclusion is supported by substantial evidence. As the ALJ accurately observed, "treatment records indicated that [Plaintiff] has a normal gait, and there were many visits when [Plaintiff] has a stable month with good pain control." Tr. at 16; see Tr. at 15-16 (summarizing treatment notes showing Plaintiff had a normal gait and was stable at doctor's appointments); Tr. at 404 (January 2016 treatment note indicating Plaintiff was "stable with meds" and had "no complaints" (capitalization omitted)); Tr. at 407, 410

---

[9]     As noted above, Plaintiff had initially alleged a disability onset date of October 7, 2010. Tr. at 205.

(December 2015 and November 2015 treatment notes indicating Plaintiff "has had a stable month with good pain control and no new issues or complaints" (capitalization omitted)); Tr. at 330, 336, 340, 344, 348, 352, 358, 362, 366, 370, 374, 378, 382, 384, 389, 392, 394, 396, 399, 402, 458, 462, 466 (treatment notes indicating Plaintiff's gait was normal). Moreover, as noted by the ALJ earlier in the Decision, see Tr. at 15, Dr. Carnevale's and Dr. Baker's treatment notes show that Plaintiff was generally doing well, see Tr. at 457 (March 2018); Tr. at 461 (February 2018); Tr. at 465 (January 2018); Tr. at 329 (December 2017); Tr. at 404 (January 2016); Tr. at 408 (December 2015); Tr. at 422 (April 2015). The ALJ also observed that "Dr. Carnevale's notes repeatedly indicated that [Plaintiff] stated that he did not have prior surgery . . . ." Tr. at 16. According to the ALJ, Dr. Carnevale's statement that Plaintiff did not have prior surgery is inaccurate. Tr. at 16. This observation is not vital to assessing Dr. Carnevale's opinions. The inconsistencies the ALJ noted, as set out above, between Dr. Carnevale's opinions and the medical evidence provide substantial evidence supporting the weight given to Dr. Carnevale's opinion.

The ALJ interpreted the January 2018 statement as having been authored by Dr. Baker. See Tr. at 16. The ALJ gave the opinion "minimal weight." Tr. at 16. In doing so, the ALJ observed that it was Dr. Carnevale, not Dr. Baker, who prepared the "original" May 2017 Physical RFC Questionnaire. Tr. at 16. The ALJ "agree[d] that [Plaintiff's] limitations have remained unchanged, and he has not had limitations to the extent alleged since October 7, 2010, since the treatment record does not start until 2014, and he did not apply for disability until January 2016." Tr. at 16.

It is immaterial whether the January 2018 statement was authored by Dr. Carnevale or Dr. Baker because, as the ALJ noted, it essentially adopts the limitations set out in the May 2017 Physical RFC Questionnaire, which the ALJ properly discounted for the above reasons.

### b. Examining Physician's Opinions

Dr. Lazo examined Plaintiff on December 22, 2016, see Tr. at 276-79,[10] and December 22, 2017, see Tr. at 429-33. On December 26, 2017, after the second examination, Dr. Lazo completed a "Listing 1.04A Worksheet" opining that Plaintiff's impairments and limitations meet the criteria for Listing 1.04[11] and that Plaintiff has had such limitations since October 7, 2010. Tr. at 435.

On December 27, 2017, Dr. Lazo completed a "Physical RFC Questionnaire" in which he provided in relevant part the following opinions. See Tr. at 437-41. Plaintiff is "[c]apable of low stress jobs." Tr. at 438. Plaintiff can walk only one city block "without rest or severe pain." Tr. at 438. Plaintiff can sit more than two hours at a time but can stand only fifteen minutes at a time. Tr. at 438-39. Plaintiff can work zero hours a week. Tr. at 439. In an eight-hour workday, Plaintiff can stand/walk for about four hours. Tr. at 439. Plaintiff does not need a job that permits shifting positions. Tr. at 439. He will need to take unscheduled breaks every hour. Tr. at 439. He must use an assistive device when

---

[10]     On January 5, 2017, shortly after his December 2016 examination, Dr. Lazo also evaluated Plaintiff's range of motion. See Tr. at 280-81.

[11]     Listing 1.04 addresses disorders of the spine resulting in a compromise of the nerve root or the spinal cord. See 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A1, § 1.04. To meet Listing 1.04A specifically, there must be "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test . . . ." Id. § 1.04(A).

"engaging in occasional standing/walking." Tr. at 439. Plaintiff cannot lift or carry even ten pounds, and he can never twist, stoop, crouch, squat, climb ladders, or climb stairs. Tr. at 440. He can frequently look down, turn his head to the side, and hold his head in a static position. Tr. at 440. He can reach only fifty percent of the time in an eight-hour workday. Tr. at 440. Plaintiff is likely to be absent from work more than four days a month. Tr. at 440. According to Dr. Lazo, Plaintiff has had the above limitations since December 7, 2010. Tr. at 441.

The ALJ gave "little weight to the opinions that were based on the second consultative evaluation by Dr. Lazo." Tr. at 17. (The ALJ was presumably referring to the opinions in the Listing 1.04A Worksheet and the December 2017 Physical RFC Questionnaire, which Dr. Lazo completed shortly after he evaluated Plaintiff a second time.) In doing so, the ALJ noted a number of inconsistencies between the opinions and Dr. Lazo's examination notes and the medical record as a whole.

Specifically, the ALJ accurately noted that in the Listing 1.04A Worksheet, "Dr. Lazo indicated that [Plaintiff] had 75% forward flexion with pain," but the notes from his second examination indicated 80%. Tr. at 17 (citations omitted); see Tr. at 432 (examination note); Tr. at 435 (Listing 1.04A Worksheet). More significantly, the ALJ also observed that in the Physical RFC Questionnaire, Dr. Lazo opined Plaintiff could reach overhead only fifty percent of the time, but "there were no limitations noted in the examination [note]." Tr. at 17; see Tr. at 430-31 (December 2017 examination note indicating Plaintiff had "[g]ood ROM of the shoulders and hands"); see also Tr. at 432 (December 2017 range of motion chart showing full range of motion in shoulders, elbows, wrists, and hands).

As the ALJ noted, there "are no additional objective tests that would support [Dr. Lazo's] findings." Tr. at 17; <u>see</u> Tr. at 14-15 (summarizing objective evidence); Tr. at 426-27 (April 2013 MRI of lumbar spine showing mostly mild findings); Tr. at 273-74 (August 2016 MRI of lumbar spine showing mostly mild findings).[12] The ALJ also accurately observed that although Dr. Lazo "indicated that [Plaintiff] needed an assistive device in December 2017, in January 2018[,] Dr. Carnevale found a normal gait." Tr. at 17-18 (citation omitted); <u>see</u> Tr. at 466 (January 2018 treatment note indicating Plaintiff's gait was normal).

The ALJ also noted that Dr. Lazo's finding in both the Listing 1.04A Listing Worksheet and the Physical RFC Questionnaire that Plaintiff's limitations have been present since October 7, 2010, was "inconsistent with his [first] consultative evaluation in 2016, which has no limitations." Tr. at 17. Although the 2016 examination note does not contain a specific functional assessment, the undersigned disagrees with Plaintiff's assertion that the ALJ's statement was inaccurate. <u>See</u> Pl.'s Br. 12. Rather, it appears the ALJ was noting that the clinical findings in the 2016 examination note do not support the opined limitations in the Listing 1.04A Listing Worksheet and the Physical RFC Questionnaire. In any event, in light of the other reasons given by the ALJ, the undersigned finds the ALJ's assessment of Dr. Lazo's opinions is supported by substantial evidence.

## V. Conclusion

For the foregoing reasons, it is

**ORDERED**:

---

[12]    The administrative transcript contains duplicates of the August 2016 MRI results. <u>See</u> Tr. at 270-71, 386-87.

1.      The Clerk of Court is directed to enter judgment pursuant to 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)     Consider whether Plaintiff's borderline age situation merits Plaintiff being placed in the advanced age category; and

(B)     Take such other action as may be necessary to resolve this matter properly.

2.      The Clerk is further directed to close the file.

3.      Plaintiff's counsel is advised that, in the event benefits are awarded on remand, any § 406(b) fee application shall be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. § 406(b)).

**DONE AND ORDERED** in Jacksonville, Florida on September 21, 2020.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record